Justice Sotomayor
delivered the opinion of the Court.
Under Chapter 12 of the Bankruptcy Code, farmer debtors .may treat- certain claims owed to a governmental unit resulting from the disposition of farm assets as discharge-able, unsecured liabilities. 11 U. S. C. § 1222(a)(2)(A). One such claim is for “any tax . . . incurred by the estate.” § 503(b)(l)(B)(i). The question presented is whether a federal income tax liability resulting from individual debtors' sale of a farm during the pendency of a Chapter 12 bankruptcy is “incurred by the estate” and thus dischargeable. We hold that it is not.
*509 I
A
In 1986, Congress enacted Chapter 12 of the Bankruptcy Code, §1201 et seq., to allow farmer debtors with regular annual income to adjust their debts. Chapter 12 was modeled on Chapter 13, § 1301 et seq., which permits individual debtors with regular annual income to preserve existing assets subject to a “court-approved plan under which they pay creditors out of their future income.” Hamilton v. Lanning, 560 U. S. 505, 508 (2010). Chapter 12 debtors similarly file a plan of reorganization. § 1221. To be confirmed, the plan must provide for the full payment of priority claims. § 1222(a)(2).
In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPÁ), § 1003, 119 Stat. 186, Congress created an exception to that requirement:
“Contents of plan
“(a) The plan shall—
[[Image here]]
“(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless—
“(A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor’s farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge.”
11 U.S. c: §1222.
Under § 1222(a)(2)(A), certain governmental claims resulting from the disposition of farm assets are downgraded to general, unsecured claims that are dischargeable after less than full payment. See § 1228(a). The claims are stripped of their priority status.
*510 That exception, however, applies only to claims in the plan that are “entitled to priority under section 507” in the first place. Section 507 lists 10 categories of such claims. Two pertain to taxes: One category, § 507(a)(8), covers prepetition taxes, and is inapplicable in this case. The other, § 507(a)(2), covers “administrative expenses allowed under section 503(b),” which in turn includes “any tax . . . incurred by the estate.” §503(b)(l)(B)(i). Thus, for postpetition taxes to be entitled to priority under §507 and eligible for the § 1222(a)(2)(A) exception, the taxes must be “incurred by the estate.”
B
Petitioners Lynwood and Brenda Hall petitioned for bankruptcy under Chapter 12 and sold their farm shortly thereafter. Petitioners initially proposed a plan of reorganization under which they would pay off outstanding liabilities with proceeds from the sale. The Internal Revenue Service (IRS) objected, asserting a federal income tax of $29,000 on the capital gains from the farm sale.
Petitioners amended their proposal to treat the income tax as a general, unsecured claim to be paid to the extent funds were available, with the unpaid balance discharged. Again the IRS objected. Taxes on income from a postpetition farm sale, the IRS argued, remain the debtors’ independent responsibility because they are neither collectible nor dis-chargeable in bankruptcy.
The Bankruptcy Court sustained the objection. The court reasoned that because a Chapter 12 estate is not a separate taxable entity under the Internal Revenue Code (IRC), see 26 U. S. C. §§1398, 1399, it cannot “incur” taxes for purposes of 11 U. S. C. § 503(b).
The District Court reversed, expressing doubt that IRC provisions are relevant to interpreting § 503(b). Based on its reading of legislative history, the District Court determined that Congress intended § 1222(a)(2)(A) to extend to petitioners’ postpetition taxes.
*511 The Court of Appeals for the Ninth Circuit reversed. 617 F. 3d 1161 (2010). The Court of Appeals held that the Chapter 12 estate does not “incur” the postpetition federal income taxes for purposes of § 503(b) because it is not a separate taxable entity under the IRC, and noted that Congress repeatedly has indicated the relevance of the IRC’s taxable entity provisions to the Bankruptcy Code. Although “sympathetic” to the view that the postpetition tax liabilities should be dischargeable, the Court of Appeals held that “the opérative language simply failed to make its way into the statute.” Id., at 1167. The Court of Appeals concluded that because the taxes do not qualify under § 503(b), they are not priority claims in the plan eligible for the § 1222(a) (2)(A) exception.
Judge Paez dissented, siding with a sister Circuit that had concluded that Congress intended § 1222(a)(2)(A) to extend to such postpetition federal income taxes. We granted certiorari to resolve the split of authority.[1] 564 U. S. 1003 (2011).
II
A
Our resolution of this case turns on the meaning of a phrase in § 503(b) of the Bankruptcy Code: “incurred by the estate.” The parties agree that § 1222(a)(2)(A) applies only to priority claims collectible in the bankruptcy plan and that postpetition federal income taxes so qualify only if they constitute a “tax . . . incurred by the estate.” § 503(b)(1)(B)(i).
The phrase “incurred by the estate” bears a plain and natural reading. See FCC v. AT&T Inc., 562 U. S. 397, 403 (2011) (“When a statute does not define a term, we typically ‘give the phrase its ordinary meaning’”). To “incur,” one *512 must “suffer or bring on oneself (a liability or expense).” Black’s Law Dictionary 836 (9th ed. 2009); see also Webster’s Third New International Dictionary 1146 (1976) (“to .. . become liable or subject to: bring down upon oneself”); Random House Dictionary 722 (1966) (“to become liable or subject to through one’s own action; bring upon oneself”). A tax “incurred by the estate” is a tax for which the estate itself is liable.
As the IRC makes clear, only certain estates are liable for federal income taxes. Title 26 U. S. C. §§ 1398 and 1399 address taxation in bankruptcy and define the division of responsibilities for the payment of taxes between the estate and the debtor on a chapter-by-chapter basis. Section 1398 provides that when an individual debtor files for Chapter 7 or 11 bankruptcy, the estate shall be liable for taxes. In such cases, the trustee files a separate return on the estate’s behalf and “[t]he tax” on “the taxable income of the estate . . . shall be paid by the trustee.” § 1398(e)(1); see also § 6012(b)(4) (“Returns of... an estate of an individual under chapter 7 or 11 ... shall be made by the fiduciary thereof”). Section 1399 provides that “[ejxcept in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a [bankruptcy] case.” In Chapter 12 and 13 cases, then, there is no separately taxable estate. The debtor — not the trustee — is generally liable for taxes and files the only tax return. See In re Lindsey, 142 B. R. 447, 448 (Bkrtcy. Ct. WD Okla. 1992) (“It is clear that, pursuant to 26 U. S. C. § 1398 and 1399, the standing Chapter 12 trustee neither files a return nor pays federal income tax”); cf. infra, at 621-522 (discussing special trustee duties in corporate-debtor cases).
These provisions suffice to resolve this case: Chapter 12 estates are not taxable entities. Petitioners, not the estate itself, are required to file the tax return and are liable for the taxes resulting from their postpetition farm sale. The postpetition federal income tax liability is not “incurred by *513 the estate” and thus is neither collectible nor dischargeable in the Chapter 12 plan.[2]
B
Our reading of “incurred by the estate” as informed by the IRC’s separate taxable entity rules draws support from a related provision of the Bankruptcy Code, 11 U. S. C. § 346, and its longstanding interplay with 26 U. S. C. §§ 1398 and 1399. That relationship illustrates that from the inception of the current Bankruptcy Code, Congress has specified on a chapter-by-chapter basis which estates are separately taxable and therefore liable for taxes. That relationship also refutes the dissent’s suggestion that applying such rules is an incongruous importation of “tax law” unconnected to “bankruptcy principles (as Congress understood them).” Post, at 631 (opinion of Breyer, J.). And it reinforces the reasonableness of our view that whether an estate “incurs” taxes under § 503(b) turns on such chapter-by-chapter distinctions.
In the original Bankruptcy Code, Congress included a provision, §346, that set out a chapter-specific division of tax liabilities between the estate and the debtor. Bankruptcy Reform Act of 1978, 92 Stat. 2565. Section 346(b)(1) provided that in an individual-debtor Chapter 7 or 11 bankruptcy, “any income of the estate may be taxed under a State or local law imposing a tax . . . only to the estate, and may not be taxed to such individual.” 92 Stat. 2565 (emphasis added); see also 11 Collier on Bankruptcy ¶TX12.03[5][b][i], p. TX12-21 (16th ed. 2011) (hereinafter Collier) (Section 346(b) “provided that in a case under chapter 7 [or] 11... the estate of an individual is a taxable entity”). Section 346(d) provided, meanwhile, that in a Chapter 13 bankruptcy, “any income of the estate or the debtor may be taxed under a *514 State- or local law imposing a tax . . . only to the debtor, and may not be taxed to the estate ” 92 Stat. 2566 (emphasis added). Congress thus established that the estate in an individual-debtor Chapter 7 or 11 bankruptcy is a separate taxable entity; the estate in a Chapter 13 bankruptcy is not.[3]
Although §346 concerned state or local taxes,[4] Congress applied its framework to federal taxes two years later. In the Bankruptcy Tax Act of 1980, 94 Stat. 3397, Congress enacted 26 U. S. C. §§1398 and 1399. Section 1398 of the *515 IRC, much like § 346(b) in the Bankruptcy Code, established that the estate is separately taxable in individual-debtor Chapter 7 or 11 cases. Section 1399 of the IRC, much like § 346(d) in the Bankruptcy Code, clarified that the estate is not separately taxable in Chapter 13 (and now Chapter 12) cases.
In 2005, Congress in BAPCPA amended § 346 and crystallized the connection between- the Bankruptcy Code and the IRC. Section 346 now expressly aligns its assignment of state or local taxes with the rules for federal taxes, providing in relevant part:
“(a) Whenever the Internal Revenue Code of 1986 provides that a separate taxable estate or entity is created in a case concerning a debtor under this title, and the income ... of such estate shall be taxed to or claimed by the estate, a separate taxable estate is also created for purposes of any State and local law imposing a tax on or measured by income and such income .. . shall be taxed to or claimed by the estate and may not be taxed to or claimed by the debtor....
“(b) Whenever the Internal Revenue Code of 1986 provides that no separate taxable estate shall be created in a case concerning a debtor under this title, and the income ... of an estate shall be taxed to or claimed by the debtor, such income . .. shall be taxed to or claimed by the debtor under a State or local law imposing a tax on or measured by income and may not be taxed to or claimed by the estate” (Emphasis added.)
Thus, whenever the estate is separately taxable under federal income tax law, that “is also” the case under state or local income tax law, § 346(a), and vice versa, § 346(b). And given that the Bankruptcy Code instructs that the assignment of state or local tax liabilities shall turn on the IRC’s separate taxable entity rules, there is parity in turning to such rules in assigning federal tax liabilities.
*516 In the same Act, Congress added § 1222(a)(2)(A). Section 1222(a)(2)(A) carves out an exception to the ordinary priority classification scheme. But § 1222(a)(2)(A) did not purport to redefine which claims are otherwise entitled to priority, much less alter the underlying division of tax liability between the estate and the debtor in Chapter 12 cases. “We assume that Congress is aware of existing law when it passes legislation,” Miles v. Apex Marine Corp., 498 U. S. 19, 32 (1990), and the existing law at the enactment of § 1222(a) (2)(A) indicated that an estate’s liability for taxes turned on chapter-by-chapter separate taxable entity rules.
C
The statutory structure further reinforces our holding that petitioners’ postpetition income taxes are not “incurred by the estate.” As a leading bankruptcy treatise and lower courts recognize, “[b]ecause chapter 12 was modeled on chapter 13, and because so many of the provisions are identical, chapter 13 cases construing provisions corresponding to chapter 12 provisions may be relied on as authority in chapter 12 cases.” 8 Collier ¶1200.01[5], at 1200-10; In re Lopez, 372 B. R. 40, 45, n. 13 (Bkrtcy. App. Panel CA9 2007); Justice v. Valley Nat. Bank, 849 F. 2d 1078, 1083 (CA8 1988). We agree. Section 1322(a)(2), like § 1222(a)(2), requires full payment of “all claims entitled to priority under section 507” under the plan. Both provisions cross-reference the same section of the Code, § 507, and in turn, the same subsection, § 503(b). Both are treated alike by IRC §§1398 and 1399. Whether postpetition taxes qualify under § 503(b) in Chapter 13 thus sheds light on whether they so qualify in petitioners’ Chapter 12 case.
Bankruptcy courts and commentators have reasoned that postpetition income taxes are not “incurred by the estate” under § 503(b) because “a tax on postpetition income of the debtor or of the chapter 13 estate is not a liability of the chapter 13 estate; it is a liability of the debtor alone.” 8 *517 Collier ¶ 1305.02[1], at 1305-5 and 1305-6.[5] For over a decade, the Government has likewise hewed to the position that “since post-petition tax liabilities are, in Chapter 13 cases, incurred by the debtor, rather than the bankruptcy estate, .characterizing such liabilities as administrative expenses is inconsistent with section 503.” IRS Chief Counsel Advice No. 200113027, p. 6 (Mar. 30, 2001), 2001 WL 307746; see also Internal Revenue Manual §5.9.10.9.2(3) (2006) (hereinafter IRM); IRS Litigation Guideline Memorandum GL-26, p. 9 (Dec. 16,1996), 1996 WL 33107107. We see no reason to depart from those established understandings. To “ ‘hold the Chapter 13 estate liable for [a] tax when it does not exist as a taxable entity defies common sense as well as Congress’ intent.’” In re Whall, 391 B. R. 1, 4 (Bkrtcy. Ct. Mass. 2008). The same holds true for a Chapter 12 estate.
A provision in Chapter 13 confirms that postpetition income taxes fall outside § 503(b). Section 1305(a)(1) provides that “[a] proof of claim may be filed by any entity that holds a claim against the debtor ... for taxes that become payable to a governmental unit while the ease is pending.” (Emphasis added.) That provision gives holders of postpetition claims the option of collecting postpetition taxes within the bankruptcy case — an option that the Government would never need to invoke if postpetition tax liabilities were already collectible inside the bankruptcy. Accordingly, lest we render §1305 “‘inoperative or superfluous,’” Hibbs v. Winn, 542 U. S. 88, 101 (2004), it is clear that postpetition income taxes are not automatically collectible in a Chapter 13 plan and, a fortiori, are not administrative' expenses under § 503(b).
*518 It follows that postpetition income taxes are not automatically collectible in petitioners’ Chapter 12 plan.[6] Because both chapters cross-reference § 503(b) in an identical manner, see §§ 1222(a)(2), 1322(a)(2), we are cognizant that any conflicting reading of § 503(b) here could disrupt settled Chapter 13 practices. See Cohen v. de la Cruz, 523 U. S. 213, 221 (1998) (the Court “'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure’ ”). Chapter 13 filings outnumber Chapter 12 filings six hundredfold. See U. S. Bankruptcy Courts — Cases Commenced During the 12-Month Period Ending September 30, 2011 (Table P-2) (estimating 676 and 417,503 annual Chapter 12 and 13 filings, *519 respectively), http://www.uscourts.gov/Statistics/Bankruptcy Statistics.aspx (as visited May 14, 2012, and available in Clerk of Court’s case file). Yet adopting petitioners’ reading of § 503(b) would mean that, in every Chapter 13 case, the Government could ignore § 1305 and expect priority payment of postpetition income taxes in every plan.
At bottom, “identical words and phrases within the same statute should normally be given the same meaning.” Powerex Corp. v. Reliant Energy Services, Inc., 551 U. S. 224, 232 (2007). Absent any indication that Congress intended a conflict between two closely related chapters, we .decline to create one.[7]
Ill
Petitioners and the-dissent advance several arguments for why the postpetition income taxes at issue should be consid-' ered “incurred by the estate,” notwithstanding the IRC’s separate taxable entity rules. But none provides sufficient reason to overcome the statute’s plain language, context, and structure.
Petitioners primarily argue that “incurred by the estate” has a temporal meaning. Petitioners emphasize that the estate only comes into existence after a bankruptcy petition is filed. Thus, they reason, taxes “incurred by the estate” refers to all taxes “incurred postpetition,” regardless of whether the estate is liable for the tax and regardless of the chapter under which a case is filed. Although all taxes “incurred by the estate” are necessarily incurred postpetition, not all taxes incurred postpetition are “incurred by the *520 estate.” That an estate cannot incur liability until it exists does not mean that every liability that arises after that point automatically becomes the estate’s liability. And there is no textual basis to focus on when the liability is incurred, as opposed to whether the liability is incurred “by the estate.”
Alternatively, petitioners contend that a tax should be considered “incurred by the estate” so long as it is payable out of estate assets. Income from postpetition sales of farm assets is considered property of the estate. See § 1207(a). Petitioners argue that even if the debtor — and not the estate — is liable for a tax, the tax is still “incurred by the estate” because the funds the debtor uses to pay the tax are property of the estate. But that too strains the text beyond what it can bear. To concede that someone other than the estate is liable for filing the return and paying the tax, and yet maintain that the estate is the one that has “incurred” the tax, defies the ordinary meaning of “incur” as bringing a liability upon oneself.
The dissent, echoing both of these points, urges that we “simply . . . consider the debtor and estate as merged.” Post, at 534. “The English language,” the dissent reasons, “permits this reading” and “do[es] not require” our reading. Post, at 531. But any reading of “tax . . . incurred by the estate” that is contingent on merging the debtor and estate— despite Congress’ longstanding efforts to distinguish between when tax liabilities are borne by the debtor or borne by the estate — is not a natural construction of the statute as written.
Moreover, these alternative readings create a conflict between § 503(b) and § 346(b). Petitioners consider postpetition state or local income taxes, like federal income taxes, to be “incurred by the estate” under § 503(b). See Tr. of Oral Arg. 4-5. But § 346(b) requires that such taxes be borne by the Chapter 12 debtor, not the estate. It is implausible to maintain that taxes are “incurred by the estate” when *521 § 346(b) specifically prohibits such taxes from being “taxed to or claimed by the estate.”
To buttress their counterintuitive readings of the text, petitioners and the dissent suggest that there is a long history of treating postpetition taxes as administrative expenses entitled to priority. Both point to two legislative Reports accompanying the 1978 enactment of §503. But; neither snippet from which they quote is inconsistent with today’s holding,[8] and we have cautioned against “allowing ambiguous legislative history to muddy clear statutory language.” Milner v. Department of Navy, 562 U. S. 562, 572 (2011).
Petitioners also point to cases suggesting that postpetition taxes were treated as administrative expenses. E. g., United States v. Noland, 517 U. S. 535, 543 (1996) (corporate Chapter 11 debtor); Nicholas v. United States, 384 U. S. 678, 687-688 (1966) (corporate Chapter XI case under predecessor Bankruptcy Act). But those cases involve corporate debtors and are therefore inapposite. Among estates that are not separately taxable, those involving corporate debtors have long been singled out by Congress for special responsibilities.[9] See H. R. Rep., at 277 (even “[i]f the estate is not *522 a separate taxable entity,” administrative responsibility can “var[y] according to the nature of the debtor”). Although estates of corporate debtors are not separate taxable entities under 26 U. S. C. §§ 1398 and 1399, the IRC requires a trustee that “has possession of or holds title to all or substantially all the property or business of a corporation” to “make the return of income for such . corporation.” § 6012(b)(3). In effect, Congress provided that the trustee in a corporate-debtor case may shoulder responsibility that parallels that borne by the trustee of a separate taxable entity. In any event, petitioners do not deny that neither the separate taxable entity provisions nor the special provisions for corporate debtors apply to them.
Finally, petitioners and the dissent contend that the purpose of 11 U. S. C. § 1222(a)(2)(A) was to provide debtors with robust relief from tax debts, relying on statements by a single Senator on unenacted bills introduced in years preceding the enactment. See Brief for Petitioners 23-36. They argue that deeming § 1222(a)(2)(A) inapplicable to their post-petition income taxes would undermine that purpose and confine the exception to prepetition taxes. But we need not resolve here what other claims, if any, are covered by § 1222(a)(2)(A).[10] Whatever the 2005 Congress’ intent with respect to § 1222(a)(2)(A), that provision merely carved out *523 an exception to the pre-existing priority classification scheme. The exception could only apply to claims “entitled to priority under section 507” in the first place. That pre-existing scheme was in turn premised on antecedent, decades-old understandings about the scope of § 503(b) and the division of tax liabilities between estates and debtors. See Dewsnup v. Timm, 502 U. S. 410, 419 (1992) (“When Congress amends the bankruptcy laws, it does not write ‘on a clean slate’”). If Congress wished to alter these background norms, it needed to enact a provision to enable post-petition income taxes to be collected in the Chapter 12 plan in the first place.
The dissent concludes otherwise by an inverted analysis. Rather than demonstrate that such claims were treated as § 507 priority claims in the first place, the dissent begins with the single Senator’s stated purpose for the exception to that priority scheme. Post, at 529-530. It then reasons backwards from there, and in the process upsets background norms in both Chapters 12 and 13.
Certainly, there may be compelling policy reasons for treating postpetition income tax liabilities as dischargeable. But if Congress intended that result, it did not so provide in the statute. Given the statute’s plain language, context, and structure, it is not for us to rewrite the statute, particularly in this complex terrain of interconnected provisions and exceptions enacted over nearly three decades. Petitioners’ position threatens ripple effects beyond this individual case for debtors in Chapter 13 and the broader bankruptcy scheme that we need not invite. As the Court of Appeals noted, “Congress is entirely free to change the law by amending the text.” 617 F. 3d, at 1167.
‡ ⅜ ⅜
We hold that the federal income tax liability resulting from petitioners’ postpetition farm sale is not “incurred by the *524 estate” under § 503(b) and thus is neither collectible nor dis-chargeable in the Chapter 12 plan. We therefore affirm the judgment of the Court of Appeals for the Ninth Circuit.

It is so ordered.

 Compare In re Dawes, 652 F. 3d 1236 (CA10 2011), and 617 F. 3d 1161 (CA9 2010) (ease below), with Knvdsen v. IRS, 581 F. 3d 696 (CA8 2009) (postpetition federal taxes are eligible for the § 1222(a)(2)(A) exception and thus dischargeable).

 Because we hold that the postpetition federal income taxes at issue are not collectible in the plan because they are not “incurred by the estate,” we need not address the Government’s broader alternative argument that Chapter 12 plans are exclusively limited to prepetition claims.

 For those of us for whom it is relevant, the legislative history confirms that Congress viewed § 346 as defining which estates were separate taxable entities. See H. R. Rep. No. 95-595, p. 275 (1977) (hereinafter H. R. Rep.) (“A threshold issue to be considered when a debtor files a petition under title 11 is whether the estate created . . . should be treated as a separate taxable entity”); id., at 334 (“Subsection (d) indicates that the estate in a chapter 13 case is not a separate taxable entity”); accord, S. Rep. No. 95-989, p. 45 (1978) (hereinafter S. Rep.); H. R. Rep., at 335 (noting “the creation of the estate of an individual under chapters 7 or 11 of title 11 as a separate taxable entity”); accord, S. Rep., at 46.
The Reports also tie separate taxable entity status to the responsibility to file returns and pay taxes. See H. R. Rep., at 277 (“If the estate is a separate taxable entity, then the representative of the estate is responsible for filing any income tax returns and paying any taxes due by the estate”); id,., at 278 (“When the estate is not a separate taxable entity, then taxation of the debtor should be conducted on the same basis as if no petition were filed”).

 A dispute over Committee jurisdiction led to the insertion of “State or local” before each mention of “law imposing a tax.” Compare H. R. 8200, 95th Cong., 1st Sess., § 346 (1977), with § 346, 92 Stat. 2565. Nonetheless, the House Report underscored that the policy behind § 346 applied equally to federal taxes:
“[T]here is a strong bankruptcy policy that these provisions apply equally to Federal, State, and local taxes. However, in order to avoid any possible jurisdictional conflict with the Ways and Means Committee over the applicability of these provisions to Federal taxes, H. R. 8200 has been amended to make the sections inapplicable to Federal taxes. The amendment . . . will obviate the need for a sequential referral of the bill to Ways and Means, which will be considering these provisions and other bankruptcy-related tax law later in this Congress.” H. R. Rep., at 275.

 See, e.g., In re Maxfield, No. 04-60355, 2009 WL 2105953, *5-*6 (Bkrtcy. Ct. ND Ind., Feb. 19, 2009); In re Jagours, 236 B. R. 616, 620 (Bkrtcy. Ct. ED Tex. 1999); In re Whall, 391 B. R. 1, 5-6 (Bkrtcy. Ct. Mass. 2008); In re Brown, No. 05-41071, 2006 WL 3370867, *3 (Bkrtcy. Ct. Mass., Nov. 20,2006); In re Gyulafia, 65 B. R. 913,916 (Bkrtcy. Ct. Kan. 1986).

 The dissent suggests that Chapter 12 can be distinguished from Chapter IS because Chapter 12 bankruptcies tend to be longer, such that the treatment of taxes is more “important.” Post, at 535. As a practical matter, it is not clear that Chapter 12 bankruptcies are substantially longer. Compare Brief for Neil E. Harl et al. as Amici Curiae 33 (median Chapter 12 case duration is under 8 months) with TV. of Oral Arg. 49 (“on average we’re talking about 4 months in a chapter 13 ease”). In any event, there is no indication that Congress intended any difference in duration — if it anticipated a difference at all — to flip the characterization of postpetition income taxes from one chapter to the other. Nor does the absence of a § 1305 equivalent in Chapter 12 justify shoehorning postpetition taxes into § 503(b), as the dissent argues. That Chapter 12 lacks a provision allowing such taxes to be brought inside the plan only clarifies that such taxes fall outside of the plan.
The dissent alternatively suggests that it “do[es] not see the serious harm in treating the relevant taxes as ‘administrative expenses’ in both Chapter 12 and Chapter 13 cases.” Post, at 536. The “harm” is to settled understandings in Chapter 13 to the contrary. The “harm” is also to § 1305; to avoid rendering § 1305 a nullity, the dissent recasts the provision as applicable not to all “taxes that become payable ... while the ease is pending,” but only those payable “after the Chapter 13 Plan is confirmed.” Ibid. The dissent does not claim, however, that this was Congress’ intent for § 1305, as Congress’ choice of words would be exceedingly overbroad if it were. And the dissent’s novel reading contravenes ample Chapter 13 authority recognizing no such limitation on §1305’s scope. E. g., 8 Collier ¶1305.02 (citing cases).

 IRS manuals dating back to 1998 indicate that the Government did not view postpetition federal income taxes as collectible in an individual debt- or’s Chapter 12 plan, even when that view was adverse to its interests. See IRM §25.17.12.9.3 (2004); id., §25.17.12.9.3(1) (2002); id., §5.9, ch. 10.8(4) (1999); id., §5.9, ch. 10.8(4) (1998). Until the enactment of 11 U. S. C. § 1222(a)(2)(A), treating such taxes as priority claims in the plan would have assured the Government of full payment before or at the time of the plan.

 The House Report stated — after noting that, in addition to prepetition taxes; “certain other taxes are entitled to priority” — that “[t]axes arising from the operation of the estate after bankruptcy are entitled to priority as administrative expenses.” H. R. Rep., at 193. That is still true. Many taxes arising after bankruptcy, as in individual-debtor Chapter 7 or 11 eases, remain entitled to priority as administrative expenses. The Senate Report, meanwhile, stated: “In general, administrative expenses include taxes which the trustee incurs in administering the debtor’s estate, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate during the case.” S. Rep., at 66 (emphasis added). That likewise remains true. Administrative expenses still include income taxes that “the trustee,” as opposed to the debtor, has incurred — again, as in individual-debtor Chapter 7 or 11 eases.

 The original §346 established that the estate of a corporate debtor is not a separate taxable entity, but nonetheless provided that “the trustee shall make any [State or local] tax return otherwise required ... to be *522 filed by or on behalf of such . . . corporation.” §§346(c)(l)-(2), 92 Stat. 2566. The current §346 similarly states, in the same provision deeming the debtor taxable when there is no separate taxable estate, that “[t]he trustee shall make such tax returns of income of corporations .... The estate shall be liable for any [State or local] tax imposed on such corporation.” § 346(b).

 The dissent opines that employment taxes must be administrative expenses “incurred by the estate” because, in its view, they “do not fit easily” within the category of administrative expenses under § 503(b)(l)(A)(i), notwithstanding the Government’s contrary representations on both points. Post, at 535. Because employment ta'xes are not at issue in this case, we offer no opinion on either question.