**Michael E. COLLINS, Appellant,**

v.

**TENNESSEE DEPARTMENT OF REVENUE, Appellee.**

**No. 16-cv-2123-SHL-tmp**

United States District Court, W.D. Tennessee, Western Division.

Signed August 3, 2016

Michael E. Collins and Robert W. Miller, Manier & Herod, P.C., Nashville, TN, for Appellant.

Gill Robert Geldreich, Office of the Attorney General, Lauren S. Lamberth, TN Attorney General's Office, Nashville, TN, for Appellee.

## ORDER AFFIRMING IN PART AND REVERSING IN PART THE BANKRUPTCY COURT DECISION AND REMANDING FOR FURTHER PROCEEDING

SHERYL H. LIPMAN, UNITED STATES DISTRICT JUDGE

Appellant Michael E. Collins (the "Trustee") appeals the decision of the Bankruptcy Court denying his motion for sanctions against Appellee Tennessee Department of Revenue (the "TDOR"). For the following reasons, the Court **AFFIRMS IN PART AND REVERSES IN PART** the Bankruptcy Court Decision and **REMANDS** for further proceedings.

### STATEMENT OF THE CASE

The facts of this case have been stipulated to and set forth as follows:

1. Faye Foods, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2005.

2. Michael E. Collins was appointed as Trustee on June 23, 2011.

3. On May 15, 2012, the Trustee filed Trustee's Amended Plan of Reorganization of Faye Foods, Inc. (the "Plan").

4. With respect to administrative expenses, the Plan provided that "[e]xcept as otherwise specifically provided above or elsewhere in this Plan, all allowed Administrative Claims shall be paid in full on the later of (1) the Effective Date, (2) ten (10) days after such claim is allowed by the Bankruptcy Court, and (3) the date such claim is due and payable pursuant to the agreement or law under which the claim arises."

5. The Plan further provides that "[u]pon confirmation of the Plan, the Debtor shall be discharged from all debts or claims that arose before the date of confirmation except as specifically provided in the Plan or the Confirmation Order, to the fullest extent contemplated under 11 U.S.C. § 1141."

6. The Plan was confirmed by order entered September 21, 2012.

7. The order of confirmation set November 20, 2012, as the deadline for filing applications for allowance of administrative claims.

8. On October 4, 2012, after confirmation of the Plan but before the deadline for filing applications for allowance of administrative claims, the TDOR filed a "Post-Petition Priority Tax Claim"[1] in the amount of $34,821.97 arising out of unpaid post-petition taxes (the "Post-Petition Claim"). The claim was entered in the claims register and was not objected to by the Debtor or the Trustee.

9. The TDOR did not file a motion or otherwise seek allowance of its Post-Petition Claim.

10. The TDOR took no action to collect its debt until July 21, 2015, when it sent a notice of default letter.

11. On September 14, 2015, the TDOR sent a notice of intent to levy.

12. According to the TDOR, on October 9, 2015, it discussed post-petition taxes with someone on behalf of the Debtor and sent an email detailing the outstanding liabilities.

13. On October 20, 2015, the TDOR issued a Levy Notification in the amount of $38,965.06, to BanCorp South, which holds the operating accounts for the reorganized Debtor.

14. BanCorp South froze the reorganized Debtor's operating account, leaving the Debtor without funds to conduct its business.

15. The Debtor contacted the Trustee, and obtained a short term loan in order to continue its operations.

16. Upon demand by the Trustee, the TDOR returned $7,000 to the reorganized Debtor as the result of the filing of an amended return by the Debtor.

(In re Faye Foods, Inc., 05-23072 (Bankr. W.D. Tenn. Aug. 24, 2012)) (hereafter "Bankruptcy Case") (Id., Order Denying Mot. for Sanctions Against TDOR for Violation of Discharge Inj. 2-4, ECF No. 579). On December 4, 2015, the bankruptcy case was reopened. (Id., Order Granting Emergency Mot. Reopen Case, ECF No. 565). On December 17, 2015, the Trustee filed a Motion for Sanctions against the TDOR

---

**1.** Post-petition taxes are taxes incurred by the estate after the debtor has filed the petition for reorganization. Hall v. United States, —— U.S. ——, 132 S.Ct. 1882, 1886, 182 L.Ed.2d 840 (2012).

relating to the levy. (Id., Mot. Sanctions TDOR, ECF No. 570). The Bankruptcy Court denied the Motion for Sanctions, and the Trustee now appeals that decision to this Court pursuant to 28 U.S.C. §§ 158(a) and (c)(1), and Federal Rule of Bankruptcy Procedure 8005.

## ANALYSIS

█ The Trustee asserts that the TDOR was prohibited from levying monies from Debtor's operating account for two reasons: 1) because the TDOR failed to file a timely application for allowance of its administrative claim, the Plan discharged all of the TDOR's tax claims; and, 2) Tennessee's six-year statute of limitations to levy taxes had run for most of the TDOR's tax claims before the TDOR executed the levy. The TDOR responds that 1) it was not required to file an application for allowance of its administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(D); and, 2) the six-year statute of limitations had not run for any of its tax claims by the time it executed the levy because the limitations period was tolled during the pendency of the bankruptcy proceedings. The Bankruptcy Court agreed with the TDOR on both arguments. The Trustee now appeals that decision to this Court. To resolve the appeal, this Court must answer two questions: 1) was the TDOR required to file an application for allowance of its post-petition tax claims? and, 2) does the statute of limitations applicable to Tennessee tax claims toll during a bankruptcy automatic stay? As discussed below, the Court finds that the TDOR was not required to file an application for allowance of its post-petition tax claims, but the statute of limitations did not toll during the automatic stay. The two issues presented in this case are questions of law; therefore, this Court reviews them *de novo*. In re Batie, 995 F.2d 85, 88 (6th Cir.1993).

## I. Application for Allowance of Administrative Claim

█ The Trustee argues that all of the TDOR's post-petition tax claims were discharged by confirmation of the Plan because the TDOR failed to file an application for their allowance prior to the administrative expense bar date. In an effort to encourage vendors and others to continue doing business with Chapter 11 debtors during the bankruptcy process, the Bankruptcy Code provides priority status to repayment of administrative expenses, to wit, "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. 503(b)(1)(A). To receive priority status, most creditors with administrative expenses must file an application with the bankruptcy court for their allowance. 11 U.S.C. § 503(b). The Bankruptcy Code provides an exception for certain claims held by governmental units, stating that the governmental units "shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense." 11 U.S.C. § 503(b)(1)(D). There is no dispute in this case that the TDOR's claims are of the type covered by the aforementioned governmental units' exception.

Despite the plain language of 11 U.S.C. § 503(b)(1)(D), the Trustee asserts that all of the TDOR's administrative expense claims were discharged by the Plan because the TDOR failed to file an application for their allowance. The TDOR did file a proof of claim for its post-petition tax claims on October 4, 2012, but never filed an "application for allowance of administrative claim." The Confirmation Order established the deadline for filing an application as November 20, 2012. The Trustee asserts that the Confirmation Order "overrode" the mandate of 11 U.S.C. § 503(b)(1)(D), and required the TDOR to

also file an application for allowance of its administrative expenses. For support, the Trustee relies on a number of cases not where administrative expense claims were discharged for the governmental units' failure to file an application for allowance, but, rather, where various governmental units' administrative expense claims were discharged because the respective governmental unit 1) failed to file a proof of claim, e.g., In re N. New England Tel. Operations LLC, 504 B.R. 372, 380 (Bankr. S.D.N.Y.2014) (finding that "the City was required to file a *proof of claim*" prior to the administrative bar date (emphasis added)), 2) failed to file a request for payment of its administrative expense, In re U.S. Energy Sys., Inc., 2013 WL 5204010, at *2 (S.D.N.Y. Sept. 16, 2013), or 3) failed to demonstrate excusable neglect for failing to file a proof of claim for its administrative expense. In re Baltimore Marine Indus., Inc., 344 B.R. 407, 416 (Bankr.D.Md. 2006). Those cases, however, do not address the situation before this Court: a governmental unit not filing an application for allowance of its administrative claim.

The Trustee's argument that the TDOR's claims were discharged by the Plan because the TDOR did not file an application as the Plan required simply fails because the plain language of the Bankruptcy Code cannot be "overridden" by a bankruptcy plan. See Hall v. United States, —— U.S. ——, 132 S.Ct. 1882, 1893, 182 L.Ed.2d 840 (2012) ("Given the statute's plain language, context, and structure, it is not for us to rewrite the statute, particularly in this complex terrain of interconnected provisions and exceptions enacted over nearly three decades."). A governmental unit with administrative expenses of the kind the TDOR held *shall not* be required to file an application for allowance of its administrative expenses, see

11 U.S.C. § 503(b)(1)(D); accordingly, the TDOR was not required to file an application for allowance of its administrative expenses.

■ In his Reply, the Trustee appears to pivot and instead suggests that the TDOR's proof of claim failed to put the Trustee on notice that the TDOR was seeking repayment of the post-petition taxes as administrative expenses (presumably, as opposed to low-priority, general unsecured claims), (Appellant Reply Br. 12, ECF No. 8.) The Trustee states that, although the TDOR cited cases wherein the filing of a proof of claim was "sufficient to constitute an administrative expense request... [those holdings] hinged on the equities of the particular facts of those cases." (Id. at 11.) Specifically, the Trustee asserts that the proofs of claims in those cases put the creditors and debtor on sufficient notice that the claims were for administrative expenses because they were filed prior to the general claims bar date and included administrative expense elements. (Id.) (citing In re Fas Mart Convenience Stores, Inc., 320 B.R. 587, 593–94 (Bankr.E.D.Va.2004) and In re Mansfield Tire & Rubber Co., Ins., 73 B.R. 735, 739 (Bankr.N.D.Ohio 1987)). This argument fails for two reasons: first, there is no requirement in the Bankruptcy Code that governmental units with administrative expenses file proofs of those claims prior to the general claims bar date as opposed to an administrative bar date; and, second, the TDOR, in fact, titled its proof of claim "POST PETITION PRIORITY TAX CLAIM," making it unclear how the debtor could have been confused or misled as to the TDOR's intention of its claim being considered an administrative expense.[2]

Because the plain language of the Bankruptcy Code exempts a governmental unit from filing an application for allowance of

2. There is an auxiliary issue with the Trustee's reasoning as well, to wit, whether a govern-

its administrative expense for the types of claims the TDOR held, the TDOR's administrative expenses were not discharged by the Plan. The Bankruptcy Court's Order is **AFFIRMED** insofar as it found that the TDOR's administrative expense claims were not discharged for failure to file an application for their allowance.

## II. Statute of Limitations on Tax Claim

Under Tennessee law, the state may collect any tax by levy within six (6) years after assessment of the tax is "made." Tenn. Code. Ann. ("T.C.A.") § 67-1-1429(a)(1)(A) (2005-2014). An assessment is "made" when the tax liability is recorded by the TDOR. T.C.A. § 67-1-1438(b) (2005-2014).[3] Here, Debtor's at-issue tax liabilities were recorded, or made, on the following dates, thus triggering the running of the limitations period on those dates:

| Tax Period | Tax Type | Date Liability Recorded |
| --- | --- | --- |
| 10/1/2005 – 10/31/2005 | Sales and Use | 12/2/2005 |
| 11/1/2005 – 11/30/2005 | Sales and Use | 12/20/2005 |
| 3/1/2006 – 3/31/2006 | Sales and Use | 4/26/2006 |
| 3/1/2006 – 3/31/2006 | Sales and Use | 4/26/2006 |
| 7/1/2006 – 7/31/2006 | Sales and Use | 8/25/2006 |
| 9/1/2007 – 9/30/2007 | Sales and Use | 10/24/2007 |
| 9/1/2007 – 9/30/2007 | Sales and Use | 10/24/2007 |
| 10/1/2007 – 10/31/2007 | Sales and Use | 11/27/2007 |
| 1/1/2009 – 12/31/2009 | Franchise and Excise | 4/21/2010 |
| 1/1/2007 – 12/31/2007 | Franchise and Excise | 9/26/2012 |

If the six-year statute of limitations applied without tolling, then the TDOR levied most of the listed taxes outside of the limitations period.[4] However, if the statute

---

mental unit may be required to file even a proof of claim for its post-petition tax claims to be paid as administrative expenses, pursuant to 11 U.S.C. § 503(b)(1)(D) and 28 U.S.C. § 960. See In re Cloobeck, 788 F.3d 1243, 1246 (9th Cir.2015) ("Subject to limited exceptions, a Trustee must pay the taxes of the estate on or before the date they come due, 28 U.S.C. § 960(b), even if no request for administrative expenses is filed by the tax authorities, 11 U.S.C. § 503(b)(1)(D), *and* the Trustee must insure that "notice and a hearing" have been provided before doing so, see id. § 503(b)(1)(B).")

3. This provision was amended in 2015 such that the limitations period begins running from the time the assessment becomes "final" as opposed to being "made." T.C.A. § 67-1-1429(a)(1)(A) (2015).

4. There is a factual dispute regarding when the 2007 and 2009 Franchise and Excise Taxes were recorded which, if resolved, would affect the timeliness of the levy as to those taxes. However, that dispute was not resolved by the Bankruptcy Court because it was moot under that court's ultimate ruling.

of limitations period was tolled during the pendency of the bankruptcy litigation, then the TDOR levied all of the listed taxes within the limitations period. The TDOR argues that the limitations period was tolled by the bankruptcy court's automatic stay and, in the alternative, that the Trustee is equitably estopped from raising a statute of limitations defense. The Trustee rebuts that the limitations period was not tolled during the automatic stay pursuant to Tennessee law, and that the TDOR's delay in pursuing its claims prevents the TDOR from utilizing equitable principles as a defense. The Court agrees with the Trustee on both points.

### A. Application of T.C.A. § 28-1-109 to the TDOR

■ To resolve the statute of limitations and tolling question, the Court must interpret a web of Tennessee and federal law. As explained below in detail, the Court finds that Tennessee has imposed a six-year statute of limitations period on its ability to levy taxes without providing for tolling of the limitations period during a bankruptcy stay, and, further, that federal law does not provide an independent basis to toll the statute of limitations.

Pursuant to T.C.A. § 67-1-1429(a)(1)(A) (2005-2014), the State of Tennessee has six years to collect taxes, beginning on the date those taxes are recorded. The TDOR argues that this limitations period was extended here pursuant to T.C.A. § 28-1-109, which provides for the tolling of a statute of limitations during the time that an injunction prevents a party from filing a civil action. The TDOR's argument relies on the bankruptcy code's automatic stay, imposed upon the filing of a petition for reorganization which "prohibits any act of creditors to collect a prepetition debt without court permission." In re Morgan, 109 B.R. 297, 298 (Bankr.W.D.Tenn.1989) (Donald, J.) (citing 11 U.S.C. § 362). The Sixth Circuit

has found that the automatic stay also enjoins a state from attempting to collect post-petition taxes from the debtor's bankruptcy estate without court approval. In re Nashville White Tracks, Eric., 731 F.2d 376, 376 (6th Cir.1984). Based on these provisions, the TDOR asserts that the automatic stay in Debtor's bankruptcy proceeding acted as an injunction under T.C.A. § 28-1-109 and tolled the six year period to collect Debtor's post-petition taxes such that the levy was executed within the limitations period.

The Trustee argues, however, that the tolling provision of T.C.A. § 28-1-109 does not apply to the TDOR because another section found within the same title, T.C.A. § 28-1-113, specifically states that "[t]he provisions of [Title 28] do not apply to actions brought by the [S]tate of Tennessee, unless otherwise expressly provided." The Trustee asserts, therefore, that the State of Tennessee (including the TDOR) is excluded from the benefit of the tolling provision of T.C.A. § 28-1-109, but still subject to the statute of limitations found in Title 67. Therefore, he argues, the levy was initiated outside of the limitations period for most of the TDOR's tax claims.

The Bankruptcy Court determined that the language of T.C.A. § 28-1-113 applies to "Title 28 of the Tennessee Code in its entirety," which would mean that Tennessee *does not* receive the benefit of the tolling provision and the TDOR indeed filed its levy outside of the limitations period. Despite that holding, however, the Bankruptcy Court then determined that the tax collection statute of limitations itself (found in Title 67) does not apply to the State of Tennessee because "[c]ases interpreting [§ 28-1-113] make clear that it is the statute of limitations themselves [as opposed to *all* of the provisions] which do not apply to the state unless expressly provided otherwise." (Bankruptcy Case,

Order Denying Mot. for Sanctions 6, ECF No. 579.) However, that conclusion is not supported by case law or the plain language of the statutes.

In Dunn v. W. F. Jameson & Sons, Inc., 569 S.W.2d 799, 801 (Tenn.1978), a case addressing a statute of limitations for property tort actions, the Tennessee Supreme Court found that the statute of limitations was not applicable to the state because another provision of the *same* title stated that: "The provisions of this title do not apply to actions brought by the [S]tate of Tennessee, unless otherwise expressly provided." Thus, the court relied on the plain language of an exclusionary provision within a title of the code to exclude the state from being subjected to that specific title of the code (where it was not otherwise expressly provided). In Dunn, the exclusionary provision and the statute of limitations were found within the same title; therefore, the exclusionary provision excluded the state from the statute of limitations. Here, the exclusionary provision is found within the same title of the code as the tolling provision (Title 28), but not in the same title of the code as the statute of limitations (Title 67). Applying the plain language of a statute where it is clear and unambiguous, Carcieri v. Salazar, 555 U.S. 379, 387, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009), the State of Tennessee is subject to the statute of limitations found in Title 67, but excluded from the tolling provision of Title 28.

■ Despite the language of the code, the Bankruptcy Judge determined that the common law rule *nullum tempus occurrit regi* ("no time runs against the king") exempted the State of Tennessee from the statute of limitations. However, *nullum tempus occurrit regi* will not override a "clear and explicit authority... given by statute" to enforce a statute of limitations against the sovereign. Dunn, 569 S.W.2d at

802. Here, T.C.A. § 67-1-1429(a)(1)(A) (2005-2014) specifically provides for a statute of limitations against the state because the state records and collects tax liabilities, the subject of that section of the code. The statute thus abrogates the aforementioned common law edict.

■ Lastly, the Bankruptcy Judge interpreted federal law as providing a basis to toll the limitations period during the automatic stay. The Bankruptcy Judge relied on 11 U.S.C. § 108(c), which provides as follows:

> (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor,... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362 ... of this title ... with respect to such claim.

11 U.S.C. § 108(c). However, this provision of the bankruptcy code does not provide an independent basis for tolling. Gersh v. Phar–Mor, Inc., 108 F.3d 1376 (6th Cir. 1997) (*"The automatic stay does not suspend the running of the statute of limitations, but only provides an additional thirty-day period to file a claim after the dissolution of the stay, in the event that the statute has expired."*) (emphasis added). Here, the bankruptcy case was closed on February 15, 2013, and the TDOR did not levy the taxes until October 20, 2015,

more than 30 days later. Because the tolling provision in T.C.A. § 28-1-109 is made inapplicable to the state by virtue of T.C.A. § 28-1-113, and the TDOR did not levy most of its claims within the six-year limitations period or within thirty days of the expiration of the stay, the TDOR levied the taxes outside of the limitations period provided by both Tennessee and federal law.

### B. Equitable Principles

The TDOR argues that, even if the six year limitations period was not tolled by virtue of T.C.A. § 28-1-113, two equitable principles support the timeliness of its levy: first, the statute of limitations was equitably tolled; and, second, the Trustee is equitably estopped from asserting a statute of limitations defense. The Trustee responds that the principle of laches belies both of the TDOR's equitable arguments. The Court agrees with the Trustee.

■ As to equitable tolling, the TDOR argues that "limitations periods are to be equitably tolled when one is prevented, through no fault of his, from acting." (Appellant Br. 14, ECF No. 7) (citing Davis v. Wilson, 349 F.Supp. 905, 906 (E.D.Tenn. 1972)). This argument fails for two reasons: first, Tennessee law has refused to recognize the doctrine of equitable tolling in civil proceedings, Whitehead v. State, 402 S.W.3d 615, 626 (Tenn.2013) (noting that the State of Tennessee is unlike other states in that it does not recognize equitable tolling in civil proceedings); and, second, the defense of laches "provides that equity will not intervene on behalf of one who has delayed unreasonably in pursuing his rights." Dennis Joslin Co., LLC v. Johnson, 138 S.W.3d 197, 200 (Tenn.Ct. App.2003). Even if the automatic stay equitably tolled the limitations period for the TDOR's claims initially, it was unreasonable for the TDOR to wait three years to

levy the taxes after the Plan's designated time to file its claims had passed; and, therefore, equity will not intervene to save the TDOR from its own dilatory conduct.

■ The TDOR last posits that the Trustee is equitably estopped from raising a statute of limitations defense. Tennessee law describes equitable estoppel as follows:

Where by promises or appearances one party is induced to believe that the other party is going to pay a claim or otherwise satisfy the claims of the first party, and in reliance on that representation the first party delays filing suit within the applicable statute of limitations, the party making the representations may be estopped to raise the statute of limitations as a defense.

Sparks v. Metro. Gov't of Nashville & Davidson Cty., 771 S.W.2d 430, 433 (Tenn. Ct.App.1989). A party asserting equitable estoppel must therefore point to an intentional representation by the opposing party, show reliance on that representation and prove that it "acted diligently in pursuing [its] claims both before and after the [opposing party] induced [it] to refrain from filing suit." Redwing v. Catholic Bishop for Diocese of Memphis, 363 S.W.3d 436, 461 (Tenn.2012). Equitable estoppel acts to equitably toll the statute of limitations only until "the plaintiff knew or, in the exercise of reasonable diligence, should have known that the conduct giving rise to the equitable estoppel claim had ceased to be operational." Redwing, 363 S.W.3d at 461.

■ Here, the TDOR argues that it was induced to believe that its claims would be paid vis-à-vis the Trustee's scheme for repayment of administrative claims in the Plan, which was filed with the Bankruptcy Court on May 15, 2012, The Trustee does not dispute inducement or reliance; rather, the Trustee asserts that the TDOR knew or should have known

that the Trustee would not pay the post-petition tax claims on the effective date of the Plan, October 21, 2012, and, by failing to issue the levy for nearly three years after that date, the TDOR failed to diligently pursue its claims. The Court agrees.

█ "Generally, the 'effective date' [of a plan] is understood as the date upon which distributions commence." In re Potomac Iron Works, Inc., 217 B.R. 170, 172 (Bankr.D.Md.1997). Therefore, even accepting that the TDOR relied upon the Trustee's representation on May 15, 2012, that the TDOR would be paid its administrative expenses, the TDOR should have known that this reliance was misplaced when it did not receive a cash distribution on the effective date of the Plan, October 21, 2012. See 11 U.S.C. § 1129 (a)(9)(A) (stating that a plan may only be confirmed if that plan provides for cash payments of administrative expense claims for post-petition taxes on the effective date of the plan). The TDOR, nonetheless, waited three years after the effective date of the Plan to levy the Debtor's post-petition taxes, and, therefore, did not "act diligently in pursuing [its] claims." Redwing, 363 S.W.3d at 461. Because of this protracted delay in pursuing its claims, the TDOR cannot equitably estop the Trustee from asserting its statute of limitations defense.

For the foregoing reasons, the Court **REVERSES** the decision of the Bankruptcy Court insofar as it found that the statute of limitations had not run on any of the TDOR's post-petition tax claims. However, there appears to be a factual dispute as to when the Franchise and Excise Taxes for 2007 and 2009 were actually recorded to begin the running of the limitations period for the TDOR to issue a levy on those claims. The Bankruptcy Court did not address this factual dispute because it was moot under the Bankruptcy Court's holding. Accordingly, the Court **REMANDS**

for further proceedings to resolve this factual dispute and adjudicate the Trustee's Motion for Sanctions consistent with this Order.

**IT IS SO ORDERED**, this 3rd day of August, 2016.