# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 20-6011

_____

In re: Philip Charles DeVries, doing business as Staple D. Land and Livestock, LLC; Angie Marie DeVries

*Debtor*s

------------------------------

Iowa Department of Revenue

*Creditor - Appellant*

v.

Philip Charles DeVries; Angie Marie DeVries

*Debtors - Appellees*

_____

Appeal from United States Bankruptcy Court
for the Northern District of Iowa - Mason City

_____

Submitted: October 23, 2020
Filed: November 25, 2020

_____

Before SCHERMER, NAIL and DOW, Bankruptcy Judges.

_____

SCHERMER, Bankruptcy Judge

The Iowa Department of Revenue (IDR) appeals the bankruptcy court's order confirming the Chapter 12 plan of Philip Charles DeVries and Angie Marie DeVries (Debtors). We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. §158(b). For the reasons that follow, we reverse.

## ISSUE

The issue on appeal is whether Bankruptcy Code §1232 allows a Chapter 12 plan to compel a taxing authority to disgorge pre-petition withholdings. We hold that the plain language of §1232 does not permit such a result.

## BACKGROUND

The facts are undisputed. In 2017, Debtors sold farmland and farming machinery, adding a substantial amount of capital gains to their taxable income and resulting in the Debtors owing a significant amount of unpaid income taxes. The Debtors' calendar year 2017 tax liability to the IDR and the United States Internal Revenue Service (IRS) was reduced by withholdings from Angie DeVries's earnings that paid $2,006 to the IDR and $4,584 to the IRS.

In February 2019 when they owed significant income taxes, the Debtors filed a joint petition for relief under Chapter 12. In addition to their 2017 tax returns for all income, the Debtors filed "pro forma" tax returns showing that no income tax liability would have been owed for that year without the farmland and equipment sales. The Debtors' Chapter 12 plan was confirmed with provisions stating that each taxing authority should "refund the overpayment of 2017 income taxes . . . to the Debtors" by payment to the Chapter 12 trustee for allocation to attorney fees. The alleged overpayments to the IDR and the IRS were in the amount of the withholdings, $2,006 for the IDR and $4,584 for the IRS.

The IDR and IRS objected to the plan provision compelling them to refund the alleged overpayments. The bankruptcy court overruled the objections and confirmed the Debtors' plan. The court considered the interaction of Bankruptcy Code §§1232(a) and 553(a). It stated that the full effects of §1232(a) were left

2

unclear under the statute. Finding an ambiguity, the court reviewed and relied on the legislative history to hold that under §1232(a) family farmers with pre-petition capital gains tax debt could "require taxing entities to issue a refund of withheld income taxes to the bankruptcy estate." *In re DeVries,* No. 19-00181, 2020 WL 2121260, at *2-5 (Bankr. N.D. Iowa Aril 28, 2020). The IDR pursued its position by appealing the confirmation order. At oral argument, the IDR made clear its opposition to the Debtors' plan does not rely upon the setoff provisions of §553. This case challenges the scope of Bankruptcy Code §1232.

## STANDARD OF REVIEW

"[T]he appellate court reviews the bankruptcy court's legal decision using a *de novo* standard and reviews factual findings for clear error." *The Bank of Missouri v. Family Pharmacy, Inc. (In re Family Pharmacy, Inc.)*, 614 B.R. 58, 60 (B.A.P. 8th Cir. 2020). "Interpretation of the Bankruptcy Code is a question of law requiring *de novo* review." *The Official Comm. of Unsec. Creditors v. The Archdiocese of St. Paul and Minn. (In re The Archdiocese of St. Paul and Minn.),* 888 F.3d 944, 950 (8th Cir. 2018) (citation omitted)); *In re Family Pharmacy, Inc.*, 614 B.R. at 60 (review of bankruptcy court's interpretation and application of Bankruptcy Code provision is *de novo*).

## DISCUSSION

The language of Bankruptcy Code §1232(a) dictates the result in this action. It states that:

> (a) Any unsecured **claim** of a governmental unit against the debtor or the estate that arises before the filing of the petition, or that arises after the filing of the petition and before the debtor's discharge under section 1228, as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation--
>
>> (1) shall be treated as an unsecured claim arising before the date on which the petition is filed;
>>
>> (2) shall not be entitled to priority under section 507;

3

(3) shall be provided for under a plan; and

(4) shall be discharged in accordance with section 1228.

11 U.S.C. §1232(a) (emphasis added).[1] "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (internal quotation marks omitted) (citation omitted) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000), in turn quoting *United States v. Ron Pair Enterprises, Inc*., 489 U.S. 235, 241 (1989)). The disposition required by the text in this case is certainly not absurd.

The IDR did not object to the Debtors' Chapter 12 plan's treatment of its claim as non-priority. This appeal concerns only the plan's requirement of disgorgement of the pre-petition withholdings. At oral argument, the Debtors cautioned our decision would have far-reaching ramifications for **post-petition** sales of farm property that result in capital gains tax. We decline to decide that issue because it is not before us.

Section 1232's language clearly sets forth the scope and purpose of the statute. It is simply a priority-stripping provision. *See Knudsen v. I.R.S*., 581 F.3d 696, 718 (8th Cir 2009), (referring to §1232's predecessor, §1222(a)(2)(A), as "a priority-stripping provision as opposed to a tax provision."), *abrogated on other grounds by Hall v. U.S.,* 566 U.S. 506 (2012). The statute does not change the way the amount of a claim of a governmental unit is calculated for the underlying tax liability; it only addresses the priority of such a claim. Nor does §1232 establish the right to or amount of a refund. With respect to the bankruptcy court's use of the term "refund," any such refund would travel under §505, not §1232 which does not mention refunds. Accordingly, nothing in §1232 authorizes a debtor's Chapter 12 plan to

---

[1] Every other subsection of § 1232 relates to a claim described in § 1232(a). *See* 11 U.S.C. §1232(b) – (d).

require a taxing authority to disgorge, refund, or turn over pre-petition withholdings for the benefit of the estate.

As §1232(a) states, it applies to "[a]ny unsecured **claim** of a governmental unit." 11 U.S.C. § 1232(a) (emphasis added). The Bankruptcy Code defines a "claim," in pertinent part, as "right to payment." 11 U.S.C. §101(5)(A). The term "claim" cannot be read to include amounts paid to the IDR by pre-petition withholdings. *See* 11 U.S.C. §502(b) (if an objection to a proof of claim is filed, "the court, . . . , shall determine the amount of such claim . . . as of the date of the filing of the petition."). On the petition date, the Debtors did not owe the IDR the amount it had collected pre-petition through withholdings, so it was not a part of the IDR's claim subject to §1232. Contrary to the Debtors' position, §1232 provides no basis to magically reverse the application of the pre-petition withheld funds when calculating the IDR's claim.

The Debtors argue that the "pro forma" tax return provides a basis for authorizing debtors under §1232 to compel return of the amount reflected as a refund. The purpose of the "pro forma" return is to determine the amount of the tax that is entitled to priority treatment. *See Knudsen*, 581 F. 3d at 718-19. ("[T]he [debtors] should calculate a return for all income, then a second 'pro forma' tax return removing all qualifying sales income, . . . the taxes shown on the 'pro forma' return would represent the portion of the tax claim entitled to priority status, while the difference between the taxes shown on the return for all income and the taxes shown on the 'pro forma' return would represent the unsecured portion of the tax claim."). The "pro forma" returns are not prepared to calculate the amount of underlying liability owed. An amount that might hypothetically have been refunded to the Debtor on a "pro forma" tax return is not a "right to payment" and therefore not a "claim." See 11 U.S.C. §101(5)(A).

The Debtors point to §1232(a)(4)'s statement that a deprioritized claim may be discharged to the extent not paid under the terms of a confirmed plan as support for their asserted entitlement to a refund. *See* 11 U.S.C. §1232(a)(4) ("[a]ny

5

unsecured claim of a governmental unit . . . . shall be discharged in accordance with section 1228"). Nothing in §1232 or elsewhere in the Bankruptcy Code suggests that a discharge under §1228 equates to a return of sums paid pre-petition.

In an effort to rebut the IDR's argument concerning the language of the statute, the Debtors cite to the Eighth Circuit's analysis in *Knudsen v. I.R.S.* about calculating the allocation a debtor's tax liability between non-priority and priority claims under §1232's predecessor statute. 581 F.3d at 715-19. They maintain that the court's analysis where the statute was silent about the allocation of tax liability between non-priority and priority claims applies here to the issue of whether a court may order disgorgement of pre-petition withholdings. Because of the statute's silence, the *Knudsen* court deemed it ambiguous and looked beyond its language. *Id.* at 716-18. Unlike the issue in *Knudsen*, disgorgement is not a matter of the statute's silence. The statute does not contemplate disgorgement in the first instance and cannot be expanded to include it. Simply put, disgorgement is foreign to §1232.

The Debtors also focus on *In re Richards*, 618 B.R. 846 (Bankr. S.D. Ind. 2020), which cited approvingly to the bankruptcy court's analysis in this case. We disagree with the bankruptcy court's analysis in this first instance. Regardless, *Richards* is distinguishable. The sale of property used in the *Richards* debtors' farming operation took place post-petition. That case was decided in the context of a claim objection, not plan confirmation or compelled disgorgement of pre-petition withholdings. In fact, the confirmed plan in *Richards* addressed the exclusive means of post-petition payment of the taxing authority's claims from plan payments and other sources and prohibited the application of payment advocated by the taxing authority. To the extent the Debtors cite to a companion case, *In re Richards*, 616 B.R. 879 (Bankr. S.D. Ind. 2020), which also involved a post-petition sale, a claim objection, and a confirmed plan that prohibited the application of payment, that *Richards* case is also not helpful to the Debtors because the court refused to order turnover of a refund to the Debtors.

6

The bankruptcy court based its opinion on the policy behind §1232, including its legislative history. It then applied that legislative history to expand the nature and purpose of the statute to permit a return of a refund reflected on a "pro forma" tax return. We see no reason to have done so. "The task of resolving the dispute over the meaning of" §1232 "begins where all such inquiries must begin: with the language of the statute itself. In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " *Ron Pair Enterprises, Inc.*, 489 U.S. at 241 (internal citation and quotation marks omitted).

## CONCLUSION

For the reasons stated, we reverse the decision to confirm the Debtors' Chapter 12 plan.

_____