**Slip Op. 25-59**

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

| **Court No. 23-00222** | **Court No. 23-00227** |
|---|---|
| CANADIAN SOLAR INTERNATIONAL LIMITED and CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD., | TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD., |
| *Plaintiffs*, | *Plaintiff*, |
| and | and |
| NEXTERA ENERGY CONSTRUCTORS, LLC, | NEXTERA ENERGY CONSTRUCTORS, LLC, |
| *Plaintiff-Intervenor*, | *Plaintiff-Intervenor*, |
| v. | v. |
| UNITED STATES, | UNITED STATES, |
| *Defendant*, | *Defendant*, |
| and | and |
| AUXIN SOLAR INC., | AUXIN SOLAR INC., |
| *Defendant-Intervenor*. | *Defendant-Intervenor*. |

Before: M. Miller Baker, Judge

## OPINION

[Sustaining the Department of Commerce's circumvention determination.]

Dated: May 16, 2025

*Jonathan T. Stoel*, *Michael G. Jacobson*, and *Nicholas R. Sparks*, Hogan Lovells US LLP, Washington, DC, on the briefs for the Canadian Solar companies, Plaintiffs in Case 23-222.

*Jonathan M. Freed* and *MacKensie R. Sugama*, Trade Pacific PLLC, Washington, DC, on the briefs for Trina Solar Science & Technology (Thailand) Ltd., Plaintiff in Case 23-227.

*Matthew R. Nicely*, *Daniel M. Witkowski*, and *Julia K. Eppard*, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, on the briefs for NextEra Energy Constructors, LLC, Plaintiff-Intervenor in both cases.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Reginald T. Blades, Jr.*, Assistant Director; and *Stephen C. Tosini*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the brief for the United States, Defendant in both cases.

*Baker*, Judge: Plaintiffs in these cases challenge the Department of Commerce's finding that solar cell imports from Thailand circumvent antidumping and countervailing duty orders on such equipment made in China. As explained below, the court sustains the agency's determination.

I

The Tariff Act of 1930, as amended, allows Commerce to impose antidumping or countervailing duties on a "class or kind" of imported merchandise if it "finds

that the merchandise reflects unfair pricing or unfair subsidization and the [International Trade] Commission finds material injury to the domestic industry." *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 917 (Fed. Cir. 2019) (citing 19 U.S.C. §§ 1671(a)(1), 1673(1)). In imposing such duties, the Department must "include 'a description of the subject merchandise, in such detail as [it] deems necessary.'" *Id.* (emphasis removed) (quoting 19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2)). The statute "defines 'subject merchandise' as 'the class or kind of merchandise that is within the scope of an investigation [or] an order under this subtitle.'" *Id.* (quoting 19 U.S.C. § 1677(25)). In practice, Commerce describes the product "within the scope of the order[ ]" by reference to its "technical characteristics" and "country of origin" (sometimes referred to in this opinion as the "source country"). *Id.* at 913.

The Department "typically determines country of origin based on the country where the merchandise is processed or manufactured." *Id.* But in trade, as in war, the antagonist gets a vote. To avoid duties, a producer may "finish[ ] or assemble[ ]" its products "in a different country" using components manufactured in the source country. *Bell Supply Co. v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018). Whether the final product as exported from the third country is deemed to originate from the source country depends on whether it was "substantial[ly] transform[ed]" in the former. *Id.*

"A substantial transformation occurs where, as a result of manufacturing or processing steps, the

product loses its identity and is transformed into a new product having a new name, character and use." *Id.* (cleaned up) (quoting *Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)). If such a transformation occurs, the third country becomes the country of origin, and the product is out-of-scope. *Id.* at 1230. Otherwise, such goods are deemed to originate from the source country, meaning they're in-scope. *Id.*

Even if substantially transformed in a third country, the products finished or assembled there from source-country components are not necessarily home free, as it were. As relevant here, the statute's anticircumvention provision, 19 U.S.C. § 1677j, authorizes—but does not require—Commerce to extend antidumping and countervailing duty orders to such articles when certain other conditions are satisfied. *See id.* § 1677j(b)(1); *see also Bell Supply*, 888 F.3d at 1230 (explaining that if the Department "applies the substantial transformation test and concludes that the imported article has a country of origin different from the country identified in an AD or CVD order, then [it] can include such merchandise within the scope of [such an] order only if it finds circumvention under § 1677j").

For there to be circumvention, imports "completed or assembled" in a third country from source-country components must be "of the same class or kind" as goods subject to the duty order. 19 U.S.C. § 1677j(b)(1)(A), (B). The "process of assembly or completion" has to be "minor or insignificant." *Id.* § 1677j(b)(1)(C). The value of the parts made in the source country must also be "a significant portion of

the total value" of the product as finally exported to this nation. *Id.* § 1677j(b)(1)(D). Finally, "action [must be] appropriate . . . to prevent" avoidance of duty orders. *Id.* § 1677j(b)(1)(E).

If Commerce finds those conditions satisfied, it must then determine whether to extend the orders to the third-country goods. In doing so, it must "take into account" certain considerations. *Id.* § 1677j(b)(3). As relevant here, they include any "affiliat[ion]" between the company doing the "assembl[y] or complet[ion]" and the manufacturer or exporter of source-country parts or components. *Id.* § 1677j(b)(3)(B).

In many anticircumvention cases, including these, the crux of the controversy is the "minor or insignificant" condition under § 1677j(b)(1)(C). As to that question, Commerce must "take into account" certain factors regarding operations in the third country. They are "(A) the level of investment"; "(B) the level of research and development"; "(C) the nature of the production process"; "(D) the extent of production facilities"; and "(E) whether the value of the processing performed" there "represents a small proportion of the value of the merchandise imported into the United States." *Id.* § 1677j(b)(2). "Commerce will evaluate each of these factors . . . , depending on the particular circumvention scenario. No single [one] will be controlling." *Statement of Administrative Action Accompanying the Uruguay Round Agreements Act* (SAA), H.R.

Doc. 103–316, vol. 1, at 893, 1994 U.S.C.C.A.N. 4040, 4216.[1]

## II

In 2012, Commerce issued orders imposing anti-dumping and countervailing duty orders on solar cells made in China.[2] *See* 77 Fed. Reg. 73,018; 77 Fed. Reg. 73,017. A decade later, domestic producer Auxin Solar Inc. asked the Department to investigate whether such merchandise imported from Thailand, Cambodia,

---

[1] The SAA is an "authoritative expression" of the statute's meaning. 19 U.S.C. § 3512(d).

[2] In technical jargon, the orders cover "crystalline silicon photovoltaic cells, . . . whether or not partially or fully assembled into other products, including, but not limited to, modules, laminates, panels and building integrated materials." Appx1004. According to the Energy Department, a solar cell "is a nonmechanical device that converts sunlight directly into electricity." https://www.eia.gov/energyexplained/solar/photovoltaics-and-electricity.php. "Individual cells can vary from 0.5 inches to about 4.0 inches across." *Id.* One such cell "can only produce 1 or 2 Watts, which is only enough electricity for small uses, such as powering calculators or wristwatches." *Id.* Cells can be "electrically connected in a packaged, weather-tight . . . *panel* (sometimes called a *module*)." *Id.* (emphasis in original). In plain English, a solar panel is an assembly of linked solar cells.

A solar cell, in turn, is created by "the addition of a p/n junction" to a solar wafer. Appx1062. For purposes of the orders, that is the key manufacturing step that determines the country of origin. *Id.*; *see also* Appx1108 ("[T]he essential nature of the final product is imparted and realized through production in the inquiry country when the p/n junction is formed in the wafer.").

Vietnam, and Malaysia circumvented those orders. *See* Appx1255.

The agency did so. In its investigation as to Thailand, it selected two mandatory respondents—Trina Solar Science & Technology (Thailand) Ltd., a Chinese-owned Thai entity, and Canadian Solar International Limited, a (despite its name) Chinese company with a Thai manufacturing affiliate, Canadian Solar Manufacturing (Thailand) Co., Ltd. (collectively Canadian Solar). Appx1001; Appx19720.

Commerce preliminarily concluded that only one of the five § 1677j(b)(2) factors (R&D) indicated that Trina's operations in Thailand were "minor or insignificant" for purposes of § 1677j(b)(1)(C), and only two (R&D and processing value) did so as to Canadian Solar. Appx1015–1022. Nevertheless, after balancing those considerations, the agency found that both companies' Thai activities were minor or insignificant under the "totality" of the circumstances. Appx1014. As all the other § 1677j(b)(1) conditions were satisfied, and after accounting for the § 1677j(b)(3) factors, the Department determined that action was necessary to prevent circumvention. Appx1023.

After receiving comments from Canadian Solar and Trina, the Department reaffirmed its finding of circumvention in its final determination. *See* Appx1056. As to its conclusion that "the process of assembly or completion" in Thailand was "minor or insignificant," *see* § 1677j(b)(1)(C), it explained that it weighed R&D heavily because of "its preeminent importance in the solar industry." Appx1120. The "stages of production

less demanding of R&D [were] those that the respondents . . . opened overseas." *Id*. The "most [R&D-]demanding" manufacturing of solar cell components was "undertaken in China." *Id*.

The agency acknowledged that it "viewed R&D less importantly in other circumvention inquiries than" it did here. *Id*. It explained that the relative significance of that factor "depends on the industry and product under investigation." *Id*. It also noted that "the importance of any one of [the § 1677j(b)(2)] criteria can vary from case to case depending on the particular circumstances unique to each circumvention inquiry." *Id*.

Although four of the § 1677j(b)(2) factors pointed *against* finding that Trina's operations in Thailand were "minor or insignificant," and three did so as to Canadian Solar, Commerce explained that in its balancing it gave those considerations less weight for several reasons. First, the Chinese corporate parents made the "major or ultimate decisions." Appx1121. Second, the parents also provided most or all of the Thai investment. *Id*. Third, "nearly all of the key high tech inputs . . . were produced in China," and thus stemmed from R&D in that country. Appx1122. Fourth, "[w]ith regard to the nature and extent of production," the machinery that Trina and Canadian Solar used in Thailand was of Chinese origin. *Id*. Finally, in the latter company's case, the "majority of the processing is still done in China." *Id*.

III

Invoking jurisdiction conferred by 28 U.S.C. § 1581(c), Canadian Solar and Trina (collectively Plaintiffs) brought these suits under 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (a)(2)(B)(vi) challenging the Department's final determination.[3] NextEra Energy Constructors, LLC, an importer of Thai solar cells, intervened in both cases as a plaintiff, while Auxin did likewise as a defendant. The parties have fully briefed Plaintiffs' and NextEra's motions for judgment on the agency record, which are ripe for disposition.

In § 1516a(a)(2) actions such as these, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The question is not whether the court would have reached the same decision on the same record. Rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well

---

[3] ECF citations in this opinion refer to Case 23-222 unless otherwise specified.

as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up); *see also SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 382 (Fed. Cir. 1983) (if Commerce makes a choice between "two fairly conflicting views," the court may not substitute its judgment even if its view would have been different "had the matter been before it *de novo*") (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## IV

Plaintiffs and NextEra attack Commerce's finding that "the process of assembly or completion" in Thailand "is minor or insignificant." *See* ECF 40, at 30–62 (Plaintiffs); ECF 43, at 6–28 (NextEra); *see also* 19 U.S.C. § 1677j(b)(1)(C). Plaintiffs also assert that the agency erred in determining that "action is appropriate" to prevent circumvention. *See* ECF 40, at 62–67; *see also* 19 U.S.C. § 1677j(b)(1)(E). The court considers these issues in turn.

### A

#### 1

Plaintiffs observe that until the determination challenged here, Commerce never previously "found a process to be minor or insignificant when less than a majority of the five factors" in 19 U.S.C. § 1677j(b)(2) "weighed in favor" of such a determination. ECF 40, at 34–35. They point to 18 agency decisions finding

circumvention based on affirmative findings on at least three (and usually more) of the five statutory factors. *See id.* at 36–37. According to Plaintiffs, this shows that Commerce "*always* justif[ies] affirmative circumvention determinations with a finding that the majority of the five factors weigh in favor of circumvention." *Id.* at 37 (emphasis in original).

The government correctly responds that Plaintiffs "identify no instance when Commerce has articulated a 'majority rule'" for assessing the § 1677j(b)(2) factors. ECF 44, at 33. Each of the 18 cited determinations turned on its facts. Thus, the Department's decision here is not inconsistent with past practice because it has never adopted the mechanical test advocated by Plaintiffs.[4]

And were the agency to adopt such a wooden policy, it would conflict with the statute, which affords the Department maneuvering room to weigh the relevant factors based on the circumstances. *See* 19 U.S.C. § 1677j(b)(2) (directing Commerce to "take [them] into

---

[4] Nor is it, as Plaintiffs contend, inconsistent with the Department's negative determination in the Malaysian segment of this inquiry. *See* ECF 40, at 38. There, the agency concluded that four of the five § 1677j(b)(2) factors did not indicate circumvention. *Id.* Critically, Commerce found— unlike in this segment involving Thailand—that respondent Jinko's R&D in Malaysia was *significant*. Case 23-224, ECF 36-2, at 49. Given the "preeminent importance" the agency attaches to that factor in the context of solar cell production, *see* Appx1120, it predictably determined that Jinko's process of assembly or completion in Malaysia was not minor or insignificant.

account"). The SAA confirms this understanding, explaining that the agency evaluates the factors "depending on the particular circumvention scenario." SAA at 893, 1994 U.S.C.C.A.N. at 4216. The government correctly observes the majority rule advocated by Plaintiffs "would effectively reduce Commerce's [role] to a counting exercise that would frustrate [its] ability to ascribe weight to the factors" in any given case. ECF 44, at 33. Balancing the § 1677j(b)(2) factors is an art, not a science.

Here, the Department did what the statute and the SAA charged it with doing: consider each of the five factors, weigh them according to the facts, and render its finding "on the totality of [the] evidence." Appx1120; *see also* Appx1121–1122. Plaintiffs' majority-rule argument fails because the agency never adopted such a policy and the statute precludes it.

2

Plaintiffs challenge Commerce's assignment of "dispositive weight [to] the R&D factor," even though "the majority of the factors weighed against circumvention." ECF 40, at 39–40. They assail this balancing on several grounds.

They first assert that the Department "failed to provide any explanation for why the [other four] factors should not be accorded their due weight." *Id*. But that's not true. The Department discussed at length why—in this solar industry context—R&D outweighed them. *See* Appx1120–1121. And it then identified

several reasons why it discounted them on their own terms. Appx1121–1122.

Plaintiffs also contend that the centrality of R&D is not "unusual or unique to" the solar power industry because "many other manufacturing industries invest in R&D in order to become more efficient." ECF 40, at 40 (citing Appx1120). They cite no authority—record or otherwise—for this proposition, nor do they explain its relevance in any event.

Plaintiffs next argue that the Department contradicted itself in concluding that R&D for solar cells assembled in Thailand is "not as important or significant" compared to such expenditures for production of precursor components in China. *Id.* (citing Appx1120). They point to the agency's determination that the "nature of the production process" (§ 1677j(b)(2)(C)) in Thailand *is* consequential. *See* Appx1104–1108. Essentially, Plaintiffs contend that it follows from that finding that the relevant R&D must be as well.

Commerce, however, reasonably explained that solar cell production in Thailand was "less demanding of R&D" than manufacturing of the precursor wafer, which "is undertaken in China." Appx1120. "[C]om-*pared with*" producing the precursor components, "building a new module factory has low technical hurdles." Appx1121 (emphasis added). "[N]ot only is R&D of preeminent importance to solar makers, but R&D is most important to wafer production that is exclusively performed by the Chinese affiliates of the respondents and not performed in [Thailand]." *Id*. This China-based R&D implicated "the most important stage[ ] of

production," *id.*, which is "the driver of the solar industry," Appx1122.

The Department, then, did not contradict itself. It explained that although the production of solar cells and modules is important in absolute terms, relatively speaking the R&D associated with that stage is less important than that linked to the manufacturing of precursor components in China. *Id.* Thus, on balance, the R&D factor indicated circumvention.

Plaintiffs next assert that Commerce's reliance on R&D conflicts with its own precedent. They characterize previous agency decisions as holding that this factor receives less weight than the other four and that "*limited* R&D alone is an insufficient basis" for finding circumvention. ECF 40, at 42 (emphasis added). There are two problems with this argument.

To begin with, the Department found that in this context, the R&D for precursor wafers is anything *but* "limited." Instead, it's "the driver of the solar industry." Appx1122. That's precisely why the agency attached outsized importance to it.

Moreover, the cited sources do not support Plaintiffs' assertions. *Certain Welded Carbon Steel Standard Pipes and Tubes from India* stated that "[a] lack of research and development expenses *does not necessarily mean* that circumvention exists." Preliminary I&D Memo at 16 (Aug. 22, 2022) (emphasis added), accompanying 87 Fed. Reg. 52,507. That principle, of course, is a truism. A lack of R&D *might* indicate circumvention, depending on the Department's weighing

of the § 1677j(b)(2) factors based on the relevant record evidence.

Similarly, Plaintiffs quote *Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan* as follows: "A 'lack of significant R&D expenses . . . is not informative in determining whether processing in [the third country] is minor or insignificant.'" ECF 40, at 42 (quoting Preliminary I&D Memo at 14 (Apr. 6, 2023), accompanying 88 Fed. Reg. 21,980). But the full context belies their selective excerpts:

> *Based on this record* . . . , a lack of significant R&D expenses with respect to . . . tubing products *does not necessarily mean* that the processing in Vietnam is minor or insignificant. Accordingly, we find that the lack of significant R&D expenses for the production of . . . tubing in Vietnam is not informative in determining whether the processing . . . is minor or insignificant.

*Tubing from Taiwan* Preliminary I&D Memo at 14 (emphasis added). The Department thus based its decision on the record before it and did not articulate a bright-line rule about the relative weight of R&D in all cases.[5]

---

[5] The same is true of *Aluminum Foil from China*, which found, "*for this product*, that the factors involving the level of investment, the level of R&D, and the extent of the production facilities in Thailand weigh less heavily in our determination . . . ." Preliminary I&D Memo at 15 (Mar. 15,

Finally, recall that Commerce attached less weight to its negative § 1677j(b)(2) findings because Chinese affiliates controlled Canadian Solar and Trina's "major or ultimate decisions" and arranged "nearly all or all" of the necessary investment in Thailand. Appx1121. Plaintiffs point out that the locus of decision making is "not one of the five 'minor or insignificant factors.'" ECF 40, at 45 (emphasis removed). NextEra zeroes in on the source of the problem, observing that "affiliation" is identified as a factor for the Department "to consider under 19 U.S.C. § 1677j(b)(3) . . . , but that is a separate statutory provision that is relevant only *after* Commerce has separately found that the 'mandatory' prerequisites" under § 1677j(b)(1) "are met, including that the process of assembly or completion is minor or insignificant." ECF 43, at 21–22 (emphasis in original and citation omitted).

The court agrees with Plaintiffs and NextEra. The statute requires Commerce to undertake an "if/then" analysis. Only *if* it finds the conditions in § 1677j(b)(1)(A)–(E) satisfied does it *then* decide whether to expand an order to cover a third country. In doing so, it must then consider the § 1677j(b)(3) factors. By letting one of them—affiliation—bleed over into its weighing of the § 1677j(b)(2) elements that bear on § 1677j(b)(1)(C), the Department erred as a matter of law.

---

2023) (emphasis added), accompanying 88 Fed. Reg. 17,177.

That said, this was harmless error for two separate and independent reasons. First, Commerce didn't just rely on affiliation to assign less weight to its negative § 1677j(b)(2) findings. It gave additional reasons that Plaintiffs do not challenge,[6] including that "all or nearly all of the key high tech inputs" and the Thai-based production machinery "were produced in China." Appx1122. And in the case of Canadian Solar, "the majority of processing is still done in China." *Id*.; *cf. Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1363 (Fed. Cir. 2023) ("Commerce's finding . . . was supported by many findings other than its [erroneous] calculation of [the plaintiff's] value added.").

Second, as Plaintiffs acknowledge, "Commerce effectively placed dispositive weight on the R&D factor." ECF 40, at 39. Even if the Department had not erroneously considered the Chinese parents' control over decision making and investment in Thailand, the result would have been the same. A remand would be wasteful. *Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1290–91 (Fed. Cir. 2020) ("[P]rinciples of harmless error apply to judicial review of agency action generally. A remand is unnecessary when . . . there is no reason to believe that the decision would have been different" even without the error.).

Finally, Plaintiffs assert that Commerce's finding that "the nature of the production process" in Thailand

---

[6] The court therefore assumes, without deciding, that the Department permissibly took these considerations into account.

is consequential is "incongruent with [its] overall conclusion that the process of assembly or completion [there] is minor or insignificant." ECF 40, at 57–58. They contend that these findings "cannot be reconciled" because cell and module production "is a major, complex manufacturing process that does not amount to minor or insignificant processing." *Id.* at 57. Trina's reply amplifies this point and asserts that "[o]verall, Commerce's findings with regard to the § 1677j(b)(2)(C) nature of processing factor logically compelled a negative determination as to circumvention." Case 23-227, ECF 49, at 4.

The court disagrees. Although the record might have permitted the Department to reach such a conclusion, it did not *compel* such a result. "Where two different, inconsistent conclusions may reasonably be drawn from the evidence in [the] record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013) (brackets omitted) (quoting *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002)). As the Department reasonably explained why R&D outweighed the other factors, including the nature of the production process, Plaintiffs' argument that it should have reached a different result is unavailing.

3

Plaintiffs argue that substantial evidence does not support the agency's determination that Canadian Solar's R&D indicated circumvention. *See* ECF 40, at 46–49. They point to "record evidence" of the company's

activities, including its hiring of "skilled engineers who innovate on a daily basis," *id.* at 46 (citing Appx10734–10735), and its spending, *id.* (citing Appx18669–18706, Appx19729). They contend that Canadian Solar devotes a "significant proportion" of its global R&D to its Thai operations. *Id.* at 47 (citing Appx10734–10735). Finally, they say the agency failed to explain how it weighed the company's Thai R&D expenses against amounts spent in China or otherwise "engage with" this information. *Id.* at 48.

Contrary to the company's argument, the agency did engage with the relevant record evidence. It found that Canadian Solar's R&D expenditures in China were more than four times greater than such costs in Thailand. Appx1048. Based on that disparity, it concluded that the company's R&D activities in the latter country were "minor or insignificant." *Id*. It explained that spending is "an important gauge of the level of R&D" and outweighed "the nature of the Thai R&D activities or the number of employees engaged in" them. Appx1099. It added that although the company claimed its Thai R&D was "important in nature, Commerce normally compares the level of R&D in the inquiry country to that in the order country." *Id*. Canadian Solar does not dispute that it never provided such a comparison. *Id*.

Given that failure, it can hardly now complain that Commerce attached too much weight to the spending disparity. The court thus concludes the agency's finding that the company's Thai R&D was inconsequential is supported by substantial evidence.

4

Plaintiffs and NextEra contest Commerce's finding, *see* Appx1115, that the value of Canadian Solar's processing in Thailand is "a small proportion of the value of" its solar cell exports to the U.S. for purposes of 19 U.S.C. § 1677j(b)(2)(E). *See* ECF 40, at 49–56 (Plaintiffs); ECF 43, at 24–28 (NextEra).

Plaintiffs first complain that the Department relied exclusively on monetary values and did not also consider the qualitative aspects of the company's Thai operations. ECF 40, at 49–50. They assert that prior agency decisions look to both considerations. *Id.* at 49–51. NextEra makes a similar argument. *See* ECF 43, at 26.

The government responds by noting that the statute distinguishes "the nature of the production process" from the "value of processing." ECF 44, at 20 (citing 19 U.S.C. § 1677j(b)(2)(C)). It contends that it would be "illogical" to require the Department to evaluate the former twice and that doing so would violate the interpretive canon against surplusage. ECF 44, at 20. Under that canon, no word in a statute "should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012). And the government observes that "so long as Commerce explains itself," which it argues the agency did here, "it is not bound by its prior determinations." ECF 44, at 22 (citing *Al Ghurair*, 65 F.4th at 1360).

Neither Plaintiffs nor NextEra argue that the Department erred in interpreting the statute. In any event, the court agrees with the agency's reading. As the government contends, the "nature of the production process" factor in § 1677j(b)(2)(C) encompasses a qualitative assessment. *Id.* at 20. Plaintiffs' and NextEra's approach would render § 1677j(b)(2)(C) surplusage.

The relevant regulation also requires assessing the "value of processing" based on "the cost of producing the part or component." Appx1112 (quoting 19 C.F.R. § 351.226(i)).[7] Commerce observed that "[c]osts are measured numerically, as is the value of merchandise." *Id.* It discussed its prior decisions and explained that they referred to "the overall decision of whether processing is minor or insignificant or the overall determination of whether circumvention is occurring," rather than the specific § 1677j(b)(2)(E) factor. Appx1113–1114. Accordingly, the court finds that the agency sufficiently explained its conclusion that "value of processing" means monetary worth rather than qualitative considerations.

Plaintiffs alternatively argue that even if the Department properly limited its analysis to monetary worth, it failed to articulate a benchmark in concluding that Canadian Solar's value of processing in Thailand—somewhere between 26 and 34 percent of U.S.

---

[7] The agency issued § 351.226 in September 2021. The decisions Plaintiffs cite all antedate the regulation.

import value[8]—was a "small proportion" of the value of its exports to the United States. ECF 40, at 54. They call the omission "striking" in view of other cases in which the agency found that smaller value-added percentages than those here were not "minor or insignificant." *Id.* at 54–55.

The court disagrees. Commerce's final determination explained that it "has found processing percentages consistent with [Canadian Solar's] to be small," Appx1115—a point that Plaintiffs do not dispute. The agency reasonably explained—although tersely—that Canadian Solar's percentage was within the range it had previously recognized as small. *Cf. Al Ghurair*, 65 F.4th at 1361 n.4 (sustaining the Department's finding that "the value added" in the third country "was insignificant *in view of prior [agency] cases making similar findings*") (emphasis added); *see also id.* (noting with approval the company's concession that "Commerce should not be held to a numerical or

---

[8] The agency treated the actual percentages as confidential. In *Ferrovanadium and Nitrated Vanadium from Russia*, discussed below, the value of processing ranged from about 12 to 26 percent. 77 Fed. Reg. 6537, 6539, 6542. The government says that range is *lower* than Canadian Solar's. ECF 44, at 24. It also cites a decision involving tissue paper from China in which the value of processing averaged 34 percent, which it states is *higher* than Canadian Solar's. *Id.* (citing 73 Fed. Reg. 21,580, 21,585).

'bright-line' test in considering the value added in third-country processing").[9]

The Department further distinguished its previous decision in *Vanadium from Russia*—where it had found 12 to 26 percent *not* to be small—"based on the extensive and substantial processing that occurred." *Id*. It reasonably explained why it reached a different outcome here—"we find it is appropriate to consider the nature of processing in the overall circumvention decision rather than in assessing the percentage calculated under" the value of processing factor. *Id*.[10] The court therefore sustains the agency's finding about the value of Canadian Solar's processing in Thailand.

Finally, even if Commerce erred in that finding, it made no difference in the outcome and thus was harm-

---

[9] Plaintiffs also argue that Commerce's affirmative value-added finding for Canadian Solar cannot be reconciled with its corresponding negative determination for Trina. *See* ECF 40, at 56. But the Department explained—and Plaintiffs do not dispute—that the former's percentage is within the range that it had previously determined to be minor. Appx1115. The implication is that Trina's percentage, which is more than just a few percentage points higher than Canadian Solar's, is outside that range.

[10] Plaintiffs also cite two other previous decisions in which Commerce found percentages comparable to Canadian Solar's not to be small. ECF 40, at 55–56 (discussing *Hot-Rolled Lead and Bismuth Carbon Steel Products from Germany and the United Kingdom*, 64 Fed. Reg. 40,336, 40,340, and *Tissue Paper from China*, 73 Fed. Reg. at 21,585–86). It's not clear that Plaintiffs brought these to the Department's attention, and in any event they do not argue that it erred in failing to address them.

less error. This is obvious because the Department's emphasis on R&D was so great that it still found Trina's process of assembly or completion in Thailand to be minor or insignificant, despite its negative determination about that company's value of processing. If such a finding didn't save Trina, a similar finding wouldn't have made a difference for Canadian Solar.

\* \* \*

The court sustains Commerce's balancing of the § 1677j(b)(2) factors and thus its conclusion that "the process of assembly or completion" of solar cells in Thailand was "minor or insignificant" under § 1677j(b)(1)(C).

B

In a last-ditch attempt to force a remand, Plaintiffs contend that "Commerce failed to demonstrate that an affirmative circumvention determination was 'appropriate' under" § 1677j(b)(1)(E). ECF 40, at 62. They claim the Department "may only issue an affirmative circumvention determination if it finds that it is 'appropriate' to do so" under that provision. *Id.*

Plaintiffs misread the statute. It does not require the agency to "demonstrate" that an "affirmative finding" is appropriate, save that it must address the statutory conditions and factors. Rather, it directs Commerce to "determine[ ] that *action is appropriate* under this paragraph [i.e., § 1677j(b)(1)] *to prevent evasion* of such order or finding." 19 U.S.C. § 1677j(b)(1)(E) (emphasis added). The Department did just that: It found action appropriate because circumvention would not

stop unless the agency included the Thai solar cells and modules within the scope of the orders on such merchandise from China. Appx1131. Nothing more was required.

Plaintiffs then pivot from their textual argument and contend action was inappropriate. They correctly observe that Commerce's administration of the orders "has centered on the location of the formation of the p/n junction[11] as the critical production step to determine whether solar cells or modules were within" the scope of the duty orders applying to China. ECF 40, at 65. "Notwithstanding . . . this history," the Department "instead erroneously focuse[d] on the production of wafers as a critical stage for determining circumvention." *Id*. Thus, the agency's "appropriateness determination was faulty because it failed to explain why [it] could suddenly reverse course and determine the wafer origin to be determinative rather than the situs of p/n junction formation." *Id*. at 66.

Commerce, however, confronted this issue head-on. It acknowledged that "it is the addition of a p/n junction that transforms a silicon wafer into a solar cell." Appx1062. Here, that occurred in Thailand, which meant that it—not China—was the country of origin.[12]

---

[11] The junction's creation is the critical step that transforms a wafer into a solar cell. *See* note 2.

[12] It also contributed to the agency's finding that the "nature of the production process" in the former country *was* significant. *See* Appx1108.

The Department also explained that "[w]hile products with a country-of-origin other than the country subject to the order are not normally covered by the order, the Act expressly provides an exception to this rule under [its] circumvention provisions . . . ." Appx1062. They "only require that the merchandise imported into the United States be of the same class or kind as the [goods] produced in the country that is the subject of the order." *Id.* Such merchandise need not "have the same country-of-origin." *Id.*

Indeed, "circumvention can only occur if the articles are from a country *not* covered by the relevant AD or CVD orders." *Id.* (brackets removed, emphasis added, and quoting *Bell Supply*, 888 F.3d at 1229). To read 19 U.S.C. § 1677j(b) as Plaintiffs do—"as applying to a class or kind of merchandise that is covered by an AD and/or CVD order only when the country of origin of the merchandise is the order country"—would disable that provision. *Id.*

Commerce was exactly right. As to this issue, Plaintiffs' quarrel is not with its analysis, but rather with *Bell Supply*, which the agency faithfully applied. That decision forecloses their argument.

*   *   *

The court denies the motions for judgment on the agency record filed by Canadian Solar (ECF 40) and NextEra (ECF 43) in Case 23-222 and similarly denies the motions for judgment on the agency record filed by Trina (ECF 44) and NextEra (ECF 47) in Case 23-227. It therefore sustains Commerce's determination.

Judgment will enter in both actions. *See* USCIT R. 58(a).

Dated: May 16, 2025      /s/ *M. Miller Baker*
       New York, NY      Judge